## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

 v.

Kevin Carter

July 15, 2003

Case No. (Criminal) 103433

BY JUDGE ARTHUR B. VIEREGG

On Friday, July 11, 2003, defendant's motion to suppress evidence of his possession of a handgun and cocaine was conducted. After hearing the testimony of two police officers, Officers Baldassari and Reiff, and after hearing oral argument, I asked the parties to submit authorities pertinent to the significance of Officer Reiff's pointing a firearm at the defendant on the night of the arrest immediately prior to his admission of possession of a firearm and a search incident to that arrest divulging cocaine on his person. Trial of this case is scheduled for today, July 15.

### The Evidence Presented

On September 19, 2002, Officers Baldassari and Reiff were on bike patrol in the Route 1 corridor area near a Multiplex Theatre where all the events related to the defendant's arrest occurred. This area is a well-known high crime area. Arrests for narcotics and weapons offenses are made in this area. At approximately 11 p.m., the two officers observed an isolated Lincoln automobile parked in the rear of the theatre. The doors to the theater were on the other side of the building. The officers, who were some distance away,

observed a man near the open driver's door for several minutes. He appeared to be urinating at one point and then reached into the opened car door at another.

The officers approached the Lincoln. Officer Baldassari approached the driver, Thomas, and asked him what he was doing. Thomas responded that he had been urinating. He appeared scared; his left hand was shaking; and his right hand was closed in a fist and remained closed. Baldassari testified that he had suspected a drug transaction was occurring and that the driver concealed something in his hand. Baldassari further testified that he was alerted by Officer Reiff, from the other side of the car, that the driver had a bulge under his clothes at his waistline. Baldassari invited the driver toward the back of the car. Shortly thereafter, Thomas fled pursued by Baldassari. He was later apprehended.

As Officer Baldassari approached the driver's side of the Lincoln, Officer Reiff approached the front passenger's side of the car. He observed one person in the front passenger seat and another in the rear seat. He also noted that the passenger in the rear seat had his hands underneath his shirt whereupon he ordered both passengers to place their hands on their knees. Reiff also saw the rear seat passenger placing his foot on a bag in the rear of the car.

Reiff testified that when Thomas fled, he drew his pistol and directed Carter and the back seat passenger to remain seated. He asked them why the driver had fled. The passengers indicated they did not know why Thomas had fled. Reiff also asked the two passengers if they had weapons. The defendant Carter stated he did. Reiff handcuffed Carter to the Lincoln car frame. When searched incident to arrest, cocaine was discovered on Carter.

*The Issues Before the Court*

Defendant Carter argues that the weapon and the cocaine taken from him were the fruits of an unlawful seizure and must be suppressed. He argues first that Officers Baldassari and Reiff lacked reasonable articulable suspicion to effectuate a stop. Carter also argues that, when Reiff drew his gun, he exceeded the bounds of reasonableness and permissible scope of an investigative detention. Thus, the two issues before me are (1) whether Baldassari and Reiff had a specific and articulable suspicion that a crime had been committed or was about to be committed; *see, Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Whitfield v. Commonwealth,* 265 Va. 358, 576 S.E.2d 463 (2003); and (2) whether Officer Reiff's continued

detention of Carter after the driver fled was reasonable under the circumstances.

*Decision*

1. *The Terry Stop*

A police officer in appropriate circumstances may detain a person for the purpose of investigating possible criminal behavior although the officer lacks probable cause to conclude a crime has been committed. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In order to justify a temporary decision, the police officer must apprehend facts to form a reasonable, articulable suspicion that the individual encountered is engaged in criminal activity. *Whitfield v. Commonwealth*, 265 Va. 358, 361, 576 S.E.2d 463 (2003), *quoting Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979).

Here, the officers were able to form a reasonable, articulable suspicion to initially stop and detain the Lincoln vehicle based on the actions of the driver, Thomas. The Commonwealth does not dispute that urinating in public is not a criminal offense. Accordingly, Thomas' public urination is not further discussed in this letter opinion. The car was located in a deserted area in the parking lot at the rear of a movie theater. The officers knew the theater to be situated in a high crime area. Thomas repeatedly stuck his head into, or reached into the vehicle, and appeared to be waiting for someone. Based on these observations, the officers were justified in approaching the Lincoln and its occupants.

Thereafter, a fast moving situation ensued. Thomas appeared scared and protective of something in his right hand. The officers suspected a possible drug transaction. Immediately thereafter, the officers observed a bulge which might have been a weapon, and, when they attempted to search Thomas, he fled. Plainly, the officers could approach the Lincoln.

The pivotal case in determining whether the officers were justified in also detaining the passengers by requiring them to keep their hands in plain view is *Wilson v. Maryland*, 519 U.S. 408, 137 L. Ed. 2d 41, 117 S. Ct. 882 (1997). In that decision, the United States Supreme Court noted that the touchstone of a *Terry* stop was reasonableness and that it involved a balancing between the personal freedoms of the citizens involved and the protection of the officers. In *Wilson*, when the defendant passenger was asked to get out of a vehicle

pulled over for speeding, drugs fell to the ground and were the basis for the passenger's arrest. The Court noted that the officers had stopped the car and that the minimal intrusion of having the passengers step out of the car was reasonable. So too, I conclude were the instructions directed by Baldassari and Reiff to the Lincoln's occupants.

## 2. *Was Officer Reiff's Conduct Reasonable?*

Whether Officer Reiff's conduct in pointing a gun at the defendant was reasonable similarly must be judged by the surrounding circumstances. The Supreme Court has recognized that a threat of physical force is appropriate in making an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The reasonableness of such threatened force must be judged by the circumstances confronting the officers. *Id.* To protect themselves during a valid *Terry* stop, police officers have a right to draw their weapons, to handcuff a suspect, or even to threaten to use force if the circumstances reasonably warrant it. *Jackson v. Commonwealth*, 39 Va. App. 624, 651, 576 S.E.2d 206 (2003), *citing Thomas v. Commonwealth*, 16 Va. App. 851, 857, 434 S.E.2d 319 (1993), *aff'd en banc*, 18 Va. App. 454, 444 S.E.2d 275 (1994).

Here, the situation confronting Baldassari and Reiff was not only fast moving, but it materially changed when a possible firearm was observed on Thomas and when he fled immediately thereafter. The conclusion that some criminal activity had been encountered was heightened. Since one of the car occupants had a gun, it was reasonable to conclude that the others might also possess weapons, a belief that ripened into reality immediately thereafter. Reiff's use of his firearm under these circumstances was also reasonable.

For the foregoing reasons, the Motion to Suppress is denied.