COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Alexandria, Virginia


MICHAEL BERNARD DORSEY

                                                MEMORANDUM OPINION* BY
v.        Record No. 2316-02-4          CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                NOVEMBER 25, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrence Ney, Judge

Robert F. Horan, III (Hart & Horan, P.C., on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Michael Bernard Dorsey (appellant) contends the trial court erred in denying his motion to

suppress evidence because the police lacked probable cause to arrest him and seize evidence from

his person and car. At trial, a jury convicted him of grand larceny in violation of Code § 18.2-95,

two counts of petit larceny in violation of Code § 18.2-96, credit card theft in violation of Code

§ 18.2-192, credit card forgery in violation of Code § 18.2-193, and two counts of fraudulent use of

a credit card in violation of Code § 18.2-195. Finding no error, we affirm.

I.  BACKGROUND

"On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."

Barkley v. Commonwealth, 39 Va. App. 682, 687, 576 S.E.2d 234, 236 (2003); see also Bass v.

Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On March 2, 2001, Kenneth Leahman went to Tyson's Corner Mall and parked his car beneath the Lord and Taylor department store. He entered the mall to wait for his family. Shortly thereafter, he returned to the car and immediately saw that the passenger window had been broken and several things were missing from his car, including a laptop computer, a palm pilot, business cards, a checkbook, and a credit card. Leahman called 911 to report the incident.

On the same day, Barbara Holmes (Holmes) and Rosalind Daniel (Daniel) also went to Tyson's Corner Mall. While there, Daniel received a call from her brother telling her to contact the Fairfax County Police. Fairfax Detective Mulvey took Daniel and Holmes to Daniel's car. At the car, they discovered glass from the car window on the garage floor. A coat, an electronic organizer, and a pair of shoes belonging to Daniel had been taken, and a coat and electronic pad belonging to Holmes were also missing.

Later that day, Detective Scott Powell (Powell) of the Fairfax Police Department saw appellant run a stop sign near Nordstrom's department store, at Tyson's Corner Mall, "at a high rate of speed." He had a passenger in the front seat. Appellant was wearing a brown suede coat. Powell found the car parked in front of Bloomingdale's department store within one minute of seeing it run the stop sign. Powell identified it as the same vehicle that ran the stop sign because of its red color, rental plates, and passenger.

Powell saw the passenger, Kenyota Williams, leave the car, take clothing, bags, and a briefcase from the passenger side backseat, and put them underneath a car parked next to him. He then took items from the driver's side backseat and put them underneath a car on the driver's side. Williams began pacing and talking on a cell phone, and entered the mall. Powell followed him inside. Detective Kuemmel, who remained near the car, retrieved a white index card that contained the name of Kenneth Leahman from underneath one of the cars where Williams had

hidden the items. Kuemmel took the card and a day planner to Bloomingdale's Loss Prevention Office in an attempt to identify the owner of the items.

After entering the mall, Powell recognized appellant as the driver of the red car and saw him purchase an item from the camera shop with a credit card. He identified appellant as the driver of the car because he was wearing the same brown coat he wore when running the stop sign. While Powell watched appellant, Kuemmel told Powell that he had found items belonging to Kenneth Leahman near the car and that Leahman was a complainant in one of the vehicle tampering and destruction of property cases on hold that day. At that time, Powell identified himself as a police officer and stopped appellant. He handcuffed appellant, conducted a pat-down, and discovered a screwdriver in his pocket. He placed appellant in the backseat of his police car.

The complainants from the tampering cases identified some of the recovered items as their property. Powell then told appellant he was under arrest for possession of stolen property, and searched him incident to the arrest. Powell found receipts from Bloomingdale's in appellant's pants pocket, and a D.C. driver's license and a credit card in the name of Kenneth Leahman.

At the conclusion of the suppression hearing, the trial court found that there was more than a reasonable, articulable suspicion for Powell to detain appellant inside the mall, place him in handcuffs, and escort him out of the mall. Further, the trial court found that the evidence available to Powell at the time of the stop constituted probable cause to believe that appellant was involved in the tampering incidents and possessed stolen property, even though only a reasonable, articulable suspicion was necessary. The court also found that the use of handcuffs at the time of the initial stop did not convert the investigative stop into an arrest. Finally, the trial

court determined that after finding the screwdriver in appellant's pocket, Powell had probable cause to arrest appellant and denied the motion to suppress.

## II. MOTION TO SUPPRESS

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). "Similarly, the question whether a person has been seized in violation of the Fourth Amendment is reviewed *de novo* on appeal." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000). However, "'we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Londono v. Commonwealth, 40 Va. App. 377, 396, 579 S.E.2d 641, 650 (2003) (quoting McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699)). Our review of the record includes evidence adduced at both the trial and the suppression hearing. Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).

Appellant argues on appeal that the trial court erred in denying his motion to suppress because Officer Powell's initial detention of appellant was an arrest unsupported by probable cause. We disagree. "The Supreme Court has recognized that a police officer in appropriate circumstances may detain a person for the purpose of investigating possibly criminal behavior, even though there is no probable cause to make an arrest." Whitfield v. Commonwealth, 265 Va.

358, 361, 576 S.E.2d 463, 464 (2003).  An investigatory detention is justified "if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" United States v. Arvizu, 534 U.S. 266, 273 (2002).  This level of suspicion does not "rise to the level required for probable cause" and "falls considerably short of satisfying a preponderance of the evidence standard."  Id. at 274.  To justify such a seizure, the officer must have possessed "a reasonable and articulable suspicion of criminal activity on the part of the defendant," Commonwealth v. Holloway, 9 Va. App. 11, 15, 384 S.E.2d 99, 101 (1989),  based upon "the totality of the circumstances."  Wells v. Commonwealth, 6 Va. App. 541, 551, 371 S.E.2d 19, 24 (1988) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

The circumstances known to Powell at the time of the stop satisfy this standard.  He saw appellant run through a stop sign at a high rate of speed, then found the automobile parked near Bloomingdale's with the motor running and appellant missing.  The passenger was removing items from the automobile and placing them underneath adjacent automobiles.  Before Powell detained appellant, Kuemmel informed Powell by telephone that some of the property under the automobile belonged to a person who had reported a theft from his automobile.  These activities alone provided a basis for the initial stop.

Appellant argues that Powell's detention of appellant was an arrest.  There is no litmus-paper test for distinguishing when a seizure exceeds the bounds of an investigative stop. Florida v. Royer, 460 U.S. 491 (1983).  A brief but complete restriction of a suspect's liberty is valid under Terry, and the police are permitted to use methods of restraint that are reasonable under the circumstances.  See Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993).  An officer may place handcuffs on a suspect during such a seizure when reasonable, and the use of handcuffs does not itself transform the detention into an arrest.  See id.

- 5 -

We agree with the trial court's analysis that the initial stop was an investigative detention. Powell feared that appellant might notice he was being watched, and flee. He recognized appellant as the driver of the car that ran through the stop sign because of his brown jacket. He also obtained information that stolen items were located near the same car. The investigative detention lasted only long enough for Powell to take appellant outside the mall and conduct the pat-down search that revealed the screwdriver. Powell was justified in taking appellant out of the mall under the circumstances. Placing appellant in handcuffs did not convert the "Terry stop" into an arrest. Only after the complainants in the vehicle tampering cases positively identified the recovered merchandise as stolen, did Powell place appellant under arrest and conduct a search incident to the arrest.[1]

Finding no error, we affirm the judgment of the trial court.

Affirmed.

---

[1] The trial court also found that if probable cause was necessary at the time of the initial stop, the officer had probable cause to arrest appellant at that time. We agree.