# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Johnny Lee Lund

### May 15, 2015

### Case Nos. (Criminal) CR14-3821, CR15-251

By Judge David W. Lannetti

Today the Court rules on the motion filed by Defendant Johnny Lee Lund seeking to suppress evidence resulting from an investigatory stop, dog sniff alert, and subsequent search of an automobile in which Lund was a passenger (the "Motion To Suppress"). The three issues before the Court are: (1) whether Lund has standing to bring the Motion To Suppress; (2) whether there was reasonable, articulable suspicion to stop the vehicle in which Lund was riding; and (3) whether the length of the stop was reasonable. The Court finds that Lund has standing to challenge the stop and subsequent search; the traffic infractions and suspicion of drug involvement were separate bases for reasonable, articulable suspicion to stop the vehicle; and the length of the stop was reasonable because it was extended only to address issues that were related to the reasons for the stop. The Court, therefore, denies the Motion To Suppress.

*Background*

Lund was a passenger in an automobile that Norfolk Police Officer Dierks ("the Officer") stopped on September 30, 2014. (Tr. 38-39, 55, 62-63.) Prior to the stop, Lund visited a house that law enforcement had been surveilling for possible drug-related activity. (Tr. 5, 13-14, 17, 19.) More specifically, Lund was observed — in chronological order — driving to the house in the vehicle, removing an item from the vehicle's trunk, going into the house, returning to the vehicle, and placing an item in the vehicle's trunk. (Tr. 71-72.) Lund, then, was observed getting into the front passenger seat of the vehicle and being driven from the house by another individual, who turned out to be the owner of the vehicle. (Tr. 35, 39, 40.) The vehicle was followed by the Officer, who conducted a traffic stop after observing the vehicle speeding and noticing that the vehicle had no state inspection sticker. (Tr. 22, 62, 72-73.) The Officer, who was the lead investigator of the surveillance operation and was driving an unmarked vehicle, did not have any summonses in his vehicle (Tr. 26, 68); he, therefore, called dispatch to request summonses be delivered to him so he could document the observed traffic infractions. (Tr. 68-69, 80.)

The Officer also called for a drug dog. (Tr. 70-71.) When the drug dog handler whom the Officer initially called indicated he was unavailable, the Officer made a separate call fourteen minutes after he initiated the stop to request another drug dog and handler. (Tr. 29.) The Officer testified that, when the drug dog arrived on scene, he had not yet completed filling out the summonses that had been delivered to him at some point. (Tr. 92.) The record is not clear regarding when the summonses were completely filled out, although the Court takes judicial notice that at least one summons was issued at some point because a copy of the summons was provided to the Court. (Tr., Ex. 2.) The drug dog conducted two passes of the vehicle and promptly alerted. (Tr. 72; Tr. Ex. 3, at 30.) A subsequent search of the vehicle revealed illegal drugs. (Tr. 37.) The entire stop, from pulling over the vehicle to the drug dog alert, took approximately twenty-six minutes. (Tr. 68, 72.) Lund was arrested and charged with two counts of possession of illegal narcotics with intent to distribute.

Lund, subsequently, filed the Motion To Suppress that is the subject of this Opinion. The parties were before the Court for a hearing on the motion on March 26, 2015. The Court granted leave for the parties to file additional post-hearing briefs on the issue.

*Positions of the Parties*

A. *Defendant's Motion To Suppress and Supplemental Brief*

In his Motion To Suppress, Lund argues that the Officer (1) expanded the scope of the stop, (2) changed the target of the stop from the driver to

both the driver and the passenger, and (3) unlawfully prolonged the stop. (Mot. To Suppress 4.) Lund claims that the unlawful expansion of the traffic stop to wait for the drug dog to arrive violated his Fourth Amendment right against unreasonable search and seizure. (*Id.*) Lund concedes that the Officer had a "proper basis" to pull over the vehicle, but argues that the stop became unlawful when the Officer extended the duration of the stop such that it "exceeded the length of time it took to conduct the 'traditional incidents of a traffic stop'." (*Id.* at 3.)

Lund's supplemental brief contains three main arguments. First, Lund states that, as a passenger, he had a reasonable expectation of privacy and, therefore, has standing to contest the search. (Supplemental Br. 2.) Second, Lund argues that the delay in getting the drug dog to the scene was unreasonably long. (*Id.* at 3-4.) Finally, Lund argues that there was no reasonable, articulable suspicion that drugs were in the car. (*Id.* at 5-9.) According to Lund, because the Commonwealth failed to satisfy its burden of establishing a drug-related basis for the stop with reasonable, articulable suspicion, the Court should suppress all evidence resulting from the investigatory stop. (*Id.*)

## B. *The Commonwealth's Brief in Opposition to Lund's Motion To Suppress*

The Commonwealth's Brief in Opposition to Lund's Motion To Suppress emphasizes that Lund was lawfully seized and that the subsequent dog sniff was proper. (Br. in Opp. 9.) The Commonwealth challenges the arguments presented by Lund and responds that: (1) Lund lacks standing to challenge the search of the vehicle; (2) the "extended" traffic stop was not improper because the Officer was not acting with the intent to unreasonably extend the stop; and (3) the dog sniff was proper because the Officer had reasonable, articulable suspicion that there were drugs in the vehicle. (*Id.* at 2-9.)

## *Analysis*

### A. *Legal Standard*

Pursuant to the exclusionary rule, evidence must be suppressed if it is seized by the government in violation of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). A court shall exclude evidence that was obtained (1) as a direct result of an illegal search and seizure or (2) as a proximate result of an illegal search and seizure. *Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963).

Conducting an investigatory stop of an automobile is a seizure for Fourth Amendment purposes. *Jackson v. Commonwealth*, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). An officer need only have reasonable, articulable suspicion to "detain a person for the purpose of investigating possibly criminal

behavior," and such a stop is valid "even though there is no probable cause to make an arrest." *Whitfield v. Commonwealth*, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). The stopping officer's reasonable suspicion needs to be "based on objective facts, that the individual is involved in criminal activity." *Id.* (citing *Brown v. Texas*, 443 U.S. 47, 51 (1979)).

The Commonwealth bears the burden of proving that an investigatory traffic stop is lawful, and "[i]n determining whether an 'articulable and reasonable suspicion' justifying an investigatory stop of a vehicle exists, courts must consider 'the totality of the circumstances — the whole picture'." *Logan v. Commonwealth*, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (quoting *Murphy v. Commonwealth*, 9 Va. App. 139, 144, 384 S.E.2d 125, 127 (1989)).

A defendant has the burden of establishing standing to bring a motion to suppress. *Sharpe v. Commonwealth*, 44 Va. App. 448, 455, 605 S.E.2d 346, 349 (2004). Of note, the driver of an automobile does not automatically have standing to challenge the search of the vehicle being driven; he or she must prove lawful possession of the vehicle. *Delong v. Commonwealth*, 234 Va. 357, 363, 362 S.E.2d 669, 672 (1987). Further, the driver or a rider in the automobile can succeed on a Fourth Amendment violation claim only if he or she possesses a reasonable expectation of privacy in the object seized or the place searched. *Rakas v. Illinois*, 439 U.S. 128, 159-62 (1978); *Sheler v. Commonwealth*, 38 Va. App. 465, 476, 566 S.E.2d 203, 208 (2002). According to the Virginia Court of Appeals: "[An] individual can claim Fourth Amendment protection under this [reasonable expectation of privacy] test only if (1) the individual has a subjective expectation of privacy and (2) the individual has an objectively reasonable expectation of privacy that is justifiable under the circumstances." *Rideout v. Commonwealth*, 62 Va. App. 779, 788, 753 S.E.2d 595, 599 (2014).

When responding to a motion to suppress, the Commonwealth has the burden to prove admissibility of the seized evidence by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). Police actions are tested using an objective reasonableness standard without regard to the underlying intent or motivation of the officers. *Poindexter v. Commonwealth*, 16 Va. App. 730, 734, 432 S.E.2d 527, 529-30 (1993).

A dog sniff is not a search for Fourth Amendment purposes. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). An officer needs reasonable, articulable suspicion to support a dog sniff, however, in order to extend the duration of a traffic stop beyond that otherwise necessary to pursue the traffic infractions related to the stop. *See Lawson v. Commonwealth*, 55 Va. App. 549, 558, 687 S.E.2d 94, 98 (2010). A drug dog alert gives police probable cause to search an automobile. *Wright v. State*, 52 Va. App. 263, 271, 663 S.E.2d 108, 113 (2008).

*Discussion*

The Court has considered Lund's Motion To Suppress, related briefs, oral argument at the March 26, 2015, hearing, and applicable authorities. The Court now rules on the three issues before the Court.

A. *Lund Has Standing To Support His Motion To Suppress*

Lund argues that he has standing, as a passenger of the stopped vehicle, to challenge the lawfulness of the stop. (Mot. To Suppress 3.) The Commonwealth in fact concedes that Lund has standing to challenge the stop. (Memo. in Opp. 2.) The Court agrees and finds that Lund, as a passenger in the stopped vehicle, has standing to challenge *the stop of the vehicle* because he, like the driver, was seized. *See Brendlin v. California,* 551 U.S. 249, 251 (2007).

The Commonwealth, while conceding that Lund has standing to challenge the stop, argues that Lund does not have standing to challenge the search of the vehicle because Lund "has no ownership or possessory interest" in the vehicle. (Memo. in Opp. 2.) Lund disagrees, arguing that he had a "possessory interest in the vehicle's trunk and therefore an expectation of privacy." (Supplemental Br. 2.) In support thereof, Lund points to *United States v. Rusher,* 966 F.2d 868 (4th Cir. 1992) (citing *United States v. Garcia,* 897 F.2d 1413, 1418-19 (7th Cir. 1990)). (*Id.*) Although Lund cites to *Rusher,* a Fourth Circuit case, he also relies on the court's holding in *Garcia,* to which *Rusher* cites. (Supplemental Br. 2.) The court in *Rusher* emphasized that a passenger needs to show a possessory interest or some expectation of privacy in the vehicle searched or the items seized in order to have standing to challenge the search. *Id.* at 874. *Garcia,* by contrast, suggests that an individual driving another's vehicle has standing to challenge a search because the court can presume the driver had the vehicle owner's permission. *Garcia,* 897 F.2d 1413, 1418-19. The facts of the present case are distinguishable from those in *Garcia* because, at the time of the stop, Lund was a passenger in the vehicle and not the driver. Here, however, Lund, even as a passenger, had a possessory interest in the item in the vehicle's trunk.

The Court finds, pursuant to the test enunciated in *Rideout v. Commonwealth,* that Lund had a subjective expectation of privacy in the item he placed in the vehicle's trunk and that his expectation was objectively reasonable given the specific facts present. *See* 62 Va. App. 779, 788, 753 S.E.2d 595, 599 (2014). Lund articulated his subjective expectation of privacy in his Supplemental Brief, (Supplemental Br. 2-3), and thus the only issue for the Court to decide is whether that subjective expectation of privacy was objectively reasonable. Given the factual circumstances, the Court does not find the Commonwealth's argument, that as a passenger Lund has no standing to challenge the search, persuasive.

The Commonwealth presented evidence, through witness testimony, that Lund was the driver and sole occupant of the vehicle when he arrived at the alleged drug dealer's house; that he was observed removing and later placing an item in the vehicle's trunk; and that he was a passenger in the vehicle when it was pulled over shortly after it departed from the house. (Tr. 31-32, 35, 48.) The temporal relationship between Lund's actions at the suspected drug dealer's house and the traffic stop leads the Court to conclude for the purposes of this motion that Lund had a possessory interest in at least the item he placed in the vehicle's trunk. Lund's possessory interest affords him an expectation of privacy in that item, and the Court finds this expectation of privacy to be objectively reasonable.

The Court therefore finds for purposes of the Motion To Suppress that Lund has standing to challenge the search of the vehicle to the extent the search interfered with his possessory interest in the item he placed in the vehicle's trunk. Whether the stop itself was an unlawful seizure is addressed *infra*.

B. *Reasonable, Articulable Suspicion Existed for the Traffic Stop Based on the Traffic Infractions and the Suspicion of Drug Involvement*

It is well settled that reasonable, articulable suspicion is required to justify an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 21-23 (1968); *accord McCain v. Commonwealth*, 275 Va. 546, 552, 659 S.E.2d 512, 516 (2008). Reasonable, articulable suspicion is a lower standard than probable cause. *Terry*, 392 U.S. at 27. In order to establish reasonable, articulable suspicion, the Court looks at all objective facts, or the totality of the circumstances, to determine whether those facts, taken together, demonstrate that the individual may be involved in criminal activity. *See Harmon v. Commonwealth*, 15 Va. App. 440, 444-45, 425 S.E.2d 77, 79 (1992).

Here, the totality of the circumstances demonstrates that reasonable, articulable suspicion of drug involvement existed to support the initial stop of the vehicle. The Commonwealth asserts that the Officer had two valid bases for the traffic stop: (1) the two observed traffic infractions *and* (2) reasonable, articulable suspicion of drug involvement. The parties agree that the Officer was justified in his stop of the vehicle based on the traffic infractions, but disagree regarding whether there was reasonable, articulable suspicion of drug involvement. (Tr. 114-16.)

The Court agrees with the Commonwealth that there was reasonable, articulable suspicion that Lund and/or the driver were involved in, or about to be involved in, criminal activity that would justify an unconsented, warrantless search of the vehicle in which they were riding. The Officer considered the following objective facts to establish reasonable, articulable suspicion: the undercover police officers ordered drugs from a suspected drug dealer; the suspected drug dealer told the officers that she was waiting

for her supplier, so the sale would be delayed; Lund drove to the suspected drug dealer's house; Lund took something out of the vehicle's trunk; Lund went into the house; shortly after Lund's arrival at the house, the suspected dealer informed the undercover officers that she was ready for the sale; the undercover officers purchased the alleged drugs from the suspected drug dealer; Lund returned to the vehicle and put something into the vehicle's trunk; and the vehicle departed from the suspected drug dealer's house and soon thereafter was pulled over by the Officer. (Tr. 71-72.)

The Court finds that these facts, taken as a whole, create a sufficient basis for the Officer to have found reasonable, articulable suspicion of drug involvement. Based on the facts known to the Officer at the time, the stop for purposes of investigating drug involvement was reasonable and did not violate Lund's constitutional rights.

## C. *The Length of the Stop Was Reasonable*

A constitutional investigatory stop cannot be extended past the time necessary to deal with the purposes of the stop. *Dickerson v. Commonwealth*, 35 Va. App. 172, 177-78, 543 S.E.2d 623, 626 (2001). Two factors allegedly contributed to the length of the stop here: (1) waiting for summonses to arrive to complete the traffic stop and (2) waiting for the drug dog to arrive. The Court examines each of these in turn to determine whether either or both resulted in an unreasonable delay.

### 1. *The Delay in Waiting for the Summonses To Arrive Was Reasonable*

The fact that the Officer did not have summonses in his vehicle was not unreasonable. The Court finds that, given the undercover nature of the surveillance operation, it was reasonable for the Officer to not have summonses in his unmarked vehicle. Although Lund believes it is noteworthy that the Officer did not ask other law enforcement officers "on scene" whether they had summonses — arguably to delay obtaining the summonses and allow time for the drug dog to arrive (Tr. 81-82) — the Court finds otherwise. The Officer's actions in acquiring summonses were reasonable in light of the fact that the other "on scene" officers also were there solely for purposes of the undercover operation and, therefore, were unlikely to have summonses with them. Waiting for the summonses also was necessary in order to complete the traffic stop.

The Court, therefore, finds that waiting for the summonses did not extend the stop past the time necessary to resolve the traffic infractions.

Although it is not clear from the record how long the stop was delayed waiting for summonses, the entire stop lasted approximately twenty-six minutes, a duration that, when supported by reasonable, articulable suspicion, has been found reasonable in the past. *See, e.g., Limonja v. Commonwealth*, 8 Va. App. 532, 543, 383 S.E.2d 476, 482 (1989) (*en banc*)

(citing various cases where courts found investigatory stops lasting up to seventy-five minutes to be reasonable).

Any delay waiting for the summonses, therefore, was reasonable and did not violate Lund's constitutional rights.

### 2. *The Delay in Waiting for the Drug Dog Was Reasonable*

As with the delay in waiting for the summonses, the delay in waiting for the drug dog to arrive was necessary for the Officer to complete the purpose of the vehicular stop. Lund attempts to analogize the present case to *Rodriguez v. United States*, 2015 U.S. lexis 2807 (U.S. Apr. 21, 2015). (Supplemental Br. 4-5.) *Rodriguez* involved a routine traffic stop that was followed by a dog sniff *after* completion of the summons for the traffic infraction and without reasonable, articulable suspicion that drug activity had occurred or was about to occur. *See id.* The Supreme Court held that the dog sniff was improper because the "authority for the seizure ... ends when tasks tied to the traffic infraction are — *or reasonably should have been* — completed." *Id.* at *11.

Here, the facts are readily distinguishable from those in *Rodriguez*. First, the dog sniff most likely occurred prior to when the Officer had completed filling out the summonses. (Tr. 92.) Although the undisputed testimony was that the drug dog arrived prior to the Officer completing the summonses (Tr. 9), no specific testimony was provided regarding how quickly the dog alerted after arrival or exactly when the Officer completed filling out the summonses. Second, and arguably more significant, the stop here was not predicated solely on traffic infractions; the Officer had reasonable, articulable suspicion of drug involvement, as discussed *supra*. The Court concedes that, *if* the sole basis for the stop were the traffic infractions, then the Officer could not have extended the stop past the reasonable time necessary to complete the summonses for the traffic infractions.

The Commonwealth apparently concedes that the stop was extended beyond the time necessary to deal with the traffic infractions. In its Memorandum in Opposition, it states that "Investigator Dierks lawfully stopped the vehicle for two traffic infractions *and extended the stop* because of the information investigators obtained during the surveillance period." (Memo. in Opp. 9 (emphasis added).) Such an extension, solely to wait for a drug dog to arrive, would be unconstitutional if the stop was based only on the observed traffic infractions. *Lawson*, 55 Va. App. at 558, 687 S.E.2d 94, 98. As noted *supra*, however, such an extension is constitutional if reasonable, articulable suspicion of drug activity exists. The Court already has found that the stop was justified based on, *inter alia*, the reasonable, articulable suspicion of drug activity. Because the Officer had information that created reasonable, articulable suspicion of drug involvement in addition to observing the traffic infractions, the stop could reasonably be extended to pursue a means of investigation that was likely to confirm or

dispel the Officer's suspicions of drug involvement. *See id*. The extension of time for a drug dog to arrive, which ultimately confirmed the Officer's suspicions, therefore, was reasonable and justified. Even if the drug dog had not alerted, the Court still would find that the relatively short extension of the stop to await the drug dog's arrival was both reasonable and justified. An extension of an investigatory stop to confirm or dispel an Officer's reasonable, articulable suspicion is justified, *regardless* of whether the Officer's suspicions are confirmed or dispelled. *See Lawson*, 55 Va. App. at 558, 687 S.E.2d 94, 98.

The Court notes that Lund is not challenging the constitutionality of the search itself. Stated differently, Lund does not contest that the drug dog's alert provides probable cause for the subsequent vehicular search. Lund instead argues that the evidence discovered as a result of the search was the fruit of an unreasonably prolonged stop and, because Lund had a possessory interest in the items seized, that he has standing to bring his motion. (Mot. to Suppress 4; Supplemental Br. 9.) The Court finds that the stop was not unreasonably prolonged and that the drug dog's alert created the requisite probable cause to permit a search of the vehicle and its passengers. *Wright v. State*, 52 Va. App. 263, 271, 663 S.E.2d 108, 113 (2008). The related search and discovery of the drugs, therefore, was constitutional.

In sum, the Court finds that the delay in waiting for the drug dog was reasonable because the stop was not extended beyond the time necessary to deal with the reasonable, articulable suspicion of drug involvement, and Lund's Fourth Amendment right against unlawful seizure, therefore, was not violated.

## Conclusion

The Court finds — based on the facts and circumstances present in this case — that the Officer's actions were justified and did not violate Lund's Fourth Amendment rights. Lund has standing to support his Motion To Suppress, and the Commonwealth established, *inter alia,* that the Officer had reasonable, articulable suspicion of drug activity to initiate the traffic stop. Based on this suspicion, the Officer was permitted to reasonably extend the stop to await the arrival of a drug dog. A reasonable delay in waiting for the drug dog, which the Court has found here, therefore, was permissible.

The Court denies Lund's Motion To Suppress evidence obtained from the warrantless vehicular search and seizure incident to the traffic stop.